1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   Custom Homes By Via LLC,              )    No. CV-12-01017-PHX-FJM
                                          )
10              Plaintiff,                 )    **ORDER**
                                          )
11  vs.                                    )
                                          )
12                                         )
    Bank of Oklahoma; Bank of Arizona,    )
13                                         )
                Defendants.                )
14                                         )
    _____       )

15

16

17

18          The court has before it defendant Bank of Oklahoma's ("Bank") motion for judgment

19  on the pleadings or alternatively for summary judgment (doc. 49), plaintiff Custom Homes'

20  response (doc. 60), and the Bank's reply (doc. 64).  We also have before us plaintiff's motion

    for partial summary judgment (doc. 51), the Bank's response (doc. 58), plaintiff's reply (doc.
21
    62), and the Bank's motion to strike (doc. 59).
22
                                       **I.**
23
            As an initial matter, we deny the Bank's motion to strike.  Our local rules of civil
24
    procedure provide for a motion, response, and reply.  LRCiv 7.2.  Objections to evidence on
25
    written motions must be presented in the responsive or reply memoranda—not by a separate
26
    motion to strike.  LRCiv 7.2(m)(2).  Therefore, the Bank's motion to strike is denied (doc.
27
    59).
28

1

**II.**

2    Plaintiff Custom Homes is in the business of building and selling custom residential

3 homes and communities.  Plaintiff planned to build and develop a residential community of

4 custom homes on approximately ten acres of land in Gilbert, Arizona.  The community was

5 to be called the "Enclave."  Defendant Bank agreed to fund the Enclave project by providing

6 plaintiff with a line of credit from which to draw funds to complete the construction.

7    On May 8, 2006, the Bank confirmed its willingness to provide a line of credit.  PSOF

8 ¶ 4 & ex. A.  Among other things, the Bank confirmed that the maturity date of the loan

9 would be "[t]welve (12) months from closing" and that "[o]ne, twelve month extension

10 option will be available," provided certain conditions exist.  Id.  Plaintiff alleges that the

11 Bank understood that the loan would be repaid with proceeds from the sale of homes in the

12 Enclave, and that construction and sales would take approximately two years.  Therefore,

13 according to plaintiff, it was the understanding of the parties that the credit line would be

14 available for two years.

15    In January 2007, the parties executed a promissory note, loan agreement, and deed of

16 trust, with a maximum principal amount of approximately $2 million ("Loan Agreement").

17 The promissory note provided that the unpaid principal balance and accrued interest were due

18 in full on January 17, 2008—one year from the closing date of the loan.  PSOF ex. D at 2.

19 And, as the parties had discussed, the Note also provided that "[t]his Note may be extended

20 an additional twelve (12) months to January 16, 2009," subject to certain conditions,

21 including 30 days notice, payment of an extension fee, no event of default, and an updated

22 appraisal of the collateral.  Id.  As collateral, plaintiff pledged a piece of property in a

23 corporate subdivision called "Gateway Norte," in Mesa, Arizona.  The value of the

24 collateralized parcel was $2,245,000.

25    Plaintiff began the development of the Enclave in January 2007 and started submitting

26 draw requests to the Bank.  Each request was a one-page document with a request for a

27 specific dollar amount to be wired to plaintiff's account.  PSOF ex. F. The Bank approved

28 each draw request through August 2007.

On September 28, 2007, the parties entered into the first of three written loan modifications, increasing the loan amount to approximately $4 million and adding an additional borrower. PSOF ex. H. Plaintiff pledged three additional properties in Gateway Norte as collateral for the increased loan amount. The Bank's appraised value of the now four collateralized lots was $4.675 million. The loan modification also added new provisions regarding disbursement requests. Specifically, the loan modification required that all disbursement requests be accompanied by "copies of bills or statements," and "proof satisfactory to Bank that all invoices for labor and materials have been paid, except those contained in the current Disbursement Request." PSOF ex. H. Notwithstanding the new requirements for draw requests, the Bank continued to approve one-page draw requests without supporting documentation. PSOF ¶ 17, ex. J.

On January 17, 2008, the first anniversary date of the loan, the parties entered into a second loan modification, whereby the Bank agreed to extend the maturity date by three months, to April 17, 2008. PSOF ex. M. On April 17, 2008, the parties agreed to a third loan modification, this time extending the maturity date for an additional 45 days to June 1, 2008. PSOF ex. N. On May 27, 2008, four days before the new maturity date, plaintiff submitted a draw request in the amount of $473,000. Of the requested advance, $22,333.38 was for "work performed and billed through 5/25/08." The remainder was for future work that had not yet been completed. Defendants denied the funds for future work, notwithstanding that almost $2 million remained in the line of credit. The Bank claimed that the loan documents did not permit disbursement of funds for future work but only for performed work and materials substantiated by accompanying bills. The loan matured four days later and all principal and interest became immediately due and payable. Plaintiff contends that the Bank breached the Loan Agreement by refusing to fund the May 27, 2008 draw request and to extend the loan maturity date beyond June 1, 2008.

Plaintiff did not repay the loan. Ultimately on December 31, 2009 the Bank conducted a trustee's sale of the four pieces of real property collateral, valued at a total of $4.65 million. Plaintiff did not file a lawsuit or seek an injunction to prevent the sale.

1    Instead, plaintiff filed this action almost two years after the trustee's sale, on December 27,

2    2011, asserting claims of breach of contract, breach of the covenant of good faith and fair

3    dealing, fraud, negligent and intentional misrepresentation, and wrongful foreclosure.[1]

4        Both parties have now filed motions for summary judgment.  Plaintiff seeks summary

5    judgment on its claim that the Bank breached the Loan Agreement when it refused to fund

6    the May 27, 2008 draw request.  The Bank contends that plaintiff's claims are barred by,

7    among other things, the statute of frauds and statute of limitations.

8                                              **III.**

9        The Bank argues that plaintiff's claims for fraudulent inducement and

10   misrepresentation are barred by the statute of frauds.[2]  The statute of frauds bars enforcement

11   of certain oral contracts, including "a contract, promise, undertaking or commitment to loan

12   money or to grant or extend credit, or a contract, promise, undertaking or commitment to

13   extend, renew or modify a loan or other extension of credit." A.R.S. § 44-101(9).  The Loan

14   Agreement is an agreement to extend credit and therefore falls within § 44-101(9).

15       However, there was a written agreement between the parties to extend the term of the

16   loan provided that certain conditions were met.  The promissory note specifically provided

17   that  "[t]his Note may be extended an additional twelve (12) months to January 16, 2009."

18   PSOF ex. D at 2.  Where plaintiff is asserting a breach of this written agreement, the statute

19   of frauds is no bar to plaintiff's claims.

20       On the other hand, there is no written agreement evidencing an undertaking by the

21

22       [1]Plaintiff has withdrawn its claim for negligence in court 6 of the complaint.  See

23   Plaintiff's Response (doc. 60) at 12.

24       [2]Defendant argues that plaintiff's "fraudulent inducement and misrepresentation

25   claims" are barred by the statute of frauds, as well as the integration, modification, and
     warranty provisions of the Loan Agreement.  These are counts 3 through 5 in the complaint.

26   In the closing paragraph of each section, however, and without any discussion, defendant
     includes count 1 (breach of contract) and count 2 (breach of the covenant of good faith and

27   fair dealing).  Despite the imprecise briefing, we nevertheless include consideration of counts

28   1 and 2 in the statute of frauds argument.

1   Bank to extend the loan "until the Enclave project was fully developed, and Plaintiff had sold

2   homes," as plaintiff asserts.  See Compl. ¶ 15, 19, 21; Def's Motion at 7.  Therefore, to the

3   extent that plaintiff's claims are based on this alleged oral promise, they are barred by the

4   statute of frauds.

5                                                IV.

6       We also reject the Bank's argument that it can relieve itself of its own alleged

7   misconduct by virtue of boilerplate language in the loan modification agreements.  The Bank

8   cites to provisions in the modification agreements where plaintiff warrants for example that

9   the indebtedness evidenced by the Note "is valid and subsisting and is not subject to any

10  defenses, offsets, claims or counterclaims."  PSOF ex M ¶ 1.7.  The Bank cannot avoid

11  liability for fraud or misrepresentations by the inclusion of boilerplate contract language.  See

12  Wagner v. Rao, 180 Ariz. 486, 489-90, 885 P.2d 174, 177-78 (Ct. App. 1994) (holding that

13  a provision in a contract allowing a party to absolve itself from its own misrepresentations

14  is unenforceable and constitutes no defense).

15                                               V.

16      The Bank next argues that plaintiff's claims for fraudulent inducement, intentional

17  misrepresentation, and negligent misrepresentation are barred by Arizona's statute of

18  limitations.[3]   The statute of limitations for fraud claims, including intentional

19  misrepresentation, is three years from the time of "discovery by the aggrieved party of the

20  facts constituting the fraud."  A.R.S. § 12-543(3).  A claim for negligent misrepresentation

21  is subject to a two-year statute of limitations.  A.R.S. § 12-542; Hullett v. Cousin, 204 Ariz.

22  292, 297, 63 P.3d 1029, 1034 (2003).  Generally, "a cause of action accrues, and the statute

23  of limitations commences, when one party is able to sue another."  Gust, Rosenfeld &

24  Henderson v. Prudential Ins. Co., 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995).  Under the

25  "discovery rule," a plaintiff's cause of action does not accrue until the plaintiff "knows or,

26

27      [3]Defendant does not include the claims in counts 1 (breach of contract) or 2 (breach
    of the covenant of good faith and fair dealing) in its argument related to the statute of
28  limitations.

1   in the exercise of reasonable diligence, should know the facts underlying the cause." <u>Id.</u>

2       Plaintiff asserts in each of the three counts that the Bank agreed to "provide the

3   necessary and agreed-upon funding upon request, and that [it] would provide Plaintiff with

4   adequate time following the development of the project for Plaintiff to sell homes in the

5   Enclave community and then repay the line of credit." <u>Compl.</u> ¶¶ 43, 51, 60. Plaintiff argues

6   that the accrual date of the misrepresentation and fraud claims should be the date of actual

7   injury, or December 31, 2009, the date the collateral was sold. Plaintiff contends that up to

8   the date of the sale the parties were actively negotiating ways to proceed.

9       The Bank disagrees, arguing that plaintiff was aware, long before the trustee's sale,

10  of the facts underlying the three tort causes of action. Plaintiff knew that the Bank refused

11  to fund the last draw request on May 27, 2008, and refused to further extend the maturity date

12  of the Loan as of June 1, 2008. Plaintiff also knew as of June 1, 2008, that if the credit line

13  was closed it was facing foreclosure and litigation. Therefore, by June 1, 2008, plaintiff

14  knew the facts underlying its claims for fraudulent inducement, intentional misrepresentation,

15  and negligent misrepresentation. With a June 1, 2008 accrual date, the statute of limitations

16  for plaintiff's fraudulent inducement and intentional misrepresentation claims ran on June

17  1, 2011, and the statute of limitations for the negligent misrepresentation claims ran on June

18  1, 2010. Because plaintiff did not file its complaint until December 27, 2011, these causes

19  of action are time-barred.

20      We reject plaintiff's argument that the Bank should be estopped from asserting a

21  statute of limitations defense where the parties had continued negotiations up until the date

22  of the trustee's sale. Plaintiff argues that from the time the Bank declared the loan fully due

23  and payable on June 1, 2008, and for the next 18 months until the foreclosure sale, the parties

24  continued to negotiate a solution and on several occasions the Bank proposed forbearance

25  agreements.

26      "There is considerable authority for the proposition that mere conduct of settlement

27  negotiations does not estop the defendant from pleading the statute of limitations." <u>McBride</u>

28  <u>v. Kieckhefer Assocs., Inc.</u>, 228 Ariz. 262, 268, 265 P.3d 1061, 1067 (Ct. App. 2011)

1   (citations omitted). "[E]quitable estoppel is more likely to be found when the defendant has

2   accepted liability or agreed to pay." Id.  That is not the case here.  There is no suggestion

3   that between the maturity date and the foreclosure that the Bank did anything to lull the

4   plaintiff into inactivity or to wrongfully continue negotiations until the statute of limitations

5   had run.  Plaintiff submits an unexecuted forbearance agreement dated February 2009,

6   PCSOF ex. I, but offers no explanation as to why the agreement was not finalized.  Without

7   more, the fact that the parties discussed forbearance is insufficient to show that plaintiff was

8   "lulled into inactivity."  Plaintiff knew throughout the 18 months between the default and the

9   foreclosure that the Bank had not agreed to forbear enforcing its remedies.  Plaintiff has

10  failed to allege sufficient facts that would support a tolling of the statute of limitations.

11  Counts 3, 4 and 5 are dismissed as time-barred.

12                                                     **VI.**

13          The Bank next contends that plaintiff's claims in counts 1 (breach of contract), 2

14  (breach of covenant of good faith and fair dealing), and 7 (wrongful foreclosure) are barred

15  by A.R.S. § 33-811(C), which provides that a trustor "shall waive all defenses and objections

16  to the [trustee's] sale not raised in an action that results in the issuance of a court order

17  granting relief . . . before the scheduled date of the sale."  In other words, a trustor waives all

18  challenges to the validity of the sale and claims to title of the property unless he obtains an

19  injunction before the sale.

20          Wrongful foreclosure[4] is a tort that "exists as a statutory duty to exercise fairly and

21  in good faith the power of sale in a deed to secure a debt."  See Herring v. Countrywide

22  Home Loans, Inc., 2007 WL 2051394, at *5 (D. Ariz. July 13, 2007) (quotation omitted).

23  Because a wrongful foreclosure claim is a direct challenge to the statutory power of sale it

24  is barred unless raised before the sale.  It is undisputed that plaintiff did not seek injunctive

25  relief or otherwise raise objections to the trustee's sale before the sale occurred.  Therefore,

26  pursuant to A.R.S. § 33-811(C), plaintiff has waived all defenses and objections to the

27  _____

28          [4]The tort of wrongful foreclosure has not been formally recognized by Arizona courts.

1   validity of the sale, including its claim for wrongful foreclosure.  Summary judgment is
2   granted in favor of the Bank on count 7.

3        The Bank also argues that plaintiff's claims for breach of contract (count 1) and
4   breach of the covenant of good faith and fair dealing (count 2) are barred by A.R.S. § 33-
5   811(C).  We disagree.

6        According to the plain language of the statute, section 33-811(C) "contemplates the
7   waiver of 'defenses and objections *to the sale' only*."  Sitton v. Deutsche Bank Nat'l Trust
8   Co., ___ P.3d ___, 2013 WL 4766283, at *3 (Ariz. Ct. App. Sept. 5, 2013) (emphasis added).
9   Therefore, not every claim by a borrower against a lender is waived.  Although Arizona
10  courts have not decided the issue directly, they have left open the possibility that a trustor's
11  claims for tort or contract damages survives a trustee's sale where the claims do not depend
12  upon the validity of the sale.  See BT Capital, LLC v. TD Serv. Co., 229 Ariz. 299, 302, 275
13  P.3d 598, 601 (2012) (recognizing that tort and contract claims for damages are distinct from
14  claims for title to property and therefore may survive a trustee's sale); Leafty v. Aussie
15  Sonoran Capital, LLC, 2012 WL 5539737, at *3 (Ariz. Ct. App. Nov. 15, 2012)[5] (holding
16  that "nothing in § 33-811(C) prevents a claim for damages based on a lender's fraud
17  committed in making or servicing a loan"); Sitton, 2013 WL 4766283, at *3 (failure to enjoin
18  a trustee's sale does not waive claims that do not "provide[] a defense to a sale or make[]
19  recovery contingent upon a sale); Maher v. Bank One, 2009 WL 2580100, at *6 (Ariz. Ct.
20  App. Aug. 20, 2009) (§ 33-811(C) did not bar breach of contract claim that would not
21  provide a valid defense to the sale); Hicks v. Callan, 2008 WL 4098979, at *10 (Ariz. Ct.
22  App. Sept. 2, 2008) (holding that plaintiff's claims for breach of contract and fraud were not
23  barred by A.R.S. § 33-811(C) because they were not seeking to set aside the trustee's sale).

24       In other words, these cases have held that § 33-811(C) does not bar a claim that does
25  not challenge the validity of a trustee's sale.  We think this is the most rational interpretation

26

27  ─────────────────
28       [5]We recognize that decisions by the Arizona Court of Appeals, published or not, are
    not binding authority.  Nevertheless, they are illustrative.

1    of the statute, the purpose of which is to ensure certainty of title in property transferred by

2    a trustee's sale.  The plain language of the statute provides that "defenses and objections to

3    the sale" are barred.  Where title is not challenged, section 33-811(C) does not bar the claim.

4           Here, plaintiff does not challenge the validity of the trustee's sale or seek to rescind

5    the sale.  Instead, plaintiff's claims in counts 1 and 2 assert that the Bank breached the Loan

6    Agreement by failing to fund the May 27, 2008 draw request and to extend the Loan

7    Agreement for a second year.  We conclude that plaintiff's claims in counts 1 and 2 are not

8    barred by § 33-811(C).

9                                              **VII.**

10          Plaintiff seeks summary judgment on its claim in count 1 that the Bank breached the

11   Loan Agreement when it refused to fund the May 27, 2008 draw request.  Plaintiff submitted

12   a draw request on May 27, 2008 for $473,000.  The Bank approved only $28,333.38 of the

13   request and denied the rest, explaining that the September 28, 2007 loan modification limited

14   funding for completed work only.  But this is contrary to the plain language of the agreement.

15          The loan modification added new provisions requiring that all disbursement requests

16   be accompanied by:

17                2.5.1          copies of bills or statements for all expenses for which a
                  disbursement is requested;
18
                  2.5.2          proof, satisfactory to Bank, that all invoices for labor and
19                materials have been paid, except those contained in the current Disbursement
                  Request.
20
21   PSOF ex. H at 5.  The new disbursement provision required that "all invoices for labor and

22   materials have been paid, *except those contained in the current Disbursement Request*."

23   (Emphasis added).  This language contemplated that invoices for labor and materials in the

24   current Disbursement Request did not have to be paid in advance.  The Bank offers no other

25   reasonable interpretation of this language.

26          The Bank has failed to establish that it was only obligated to fund completed work.

27   Notwithstanding the Bank's reluctance to fund a draw request only days before the loan

28   maturity date, the Bank points to nothing in the Loan Agreement that would allow it to deny

a request on this basis.  Accordingly, we conclude that the Bank breached the Loan Agreement by failing to fund the May 27, 2008 draw request.

**VIII.**

The Bank argues that because plaintiff's tort claims are barred by the statute of limitations, its claim for punitive damages must also be dismissed.  We agree.  Plaintiff's claim for punitive damages is dismissed.

**IX.**

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiff's motion for partial summary judgment (doc. 51).  Plaintiff is granted summary judgment on count 1 for failure to fund the May 27, 2008 draw request.  Plaintiff's motion for summary judgment on count 7 (wrongful foreclosure) is denied.

**IT IS FURTHER ORDERED GRANTING IN PART AND DENYING IN PART** the Bank's motion for summary judgment (doc. 49).  The Bank's motion for summary judgment on Counts 3, 4, 5, 7 and plaintiff's claim for punitive damages is granted.  Its motion for summary judgment on counts 1 and 2 is denied.

**IT IS FURTHER ORDERED DENYING** defendant's motion to strike (doc. 59).

The only claims remaining in this case are plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing regarding plaintiff's claim that the Bank breached the Loan Agreement by failing to extend the maturity date to January 2009, and damages on the breach of contract claim for which we have granted summary judgment in plaintiff's favor.

DATED this 25th day of October, 2013.

_Frederick J. Martone_
Frederick J. Martone
Senior United States District Judge